JULIETTE P. WHITE (9616)
MICHAEL W. YOUNG (12282)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah  84111
(801) 532-1234 (telephone)
(801) 536-6111 (facsimile)
jwhite@parsonsbehle.com
myoung@parsonsbehle.com

*Attorneys for Plaintiff Koch Industries, Inc.*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KOCH INDUSTRIES, INC. <br><br> Plaintiff, <br><br> v. <br><br> JOHN DOES 1-25, <br><br> Defendants. | Case No. 2:10-cv-01275-DAK <br><br> Judge Dale A. Kimball <br><br> Magistrate Judge Samuel Alba <br><br> (Hearing Requested) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ iii

FACTUAL BACKGROUND ................................................................................................ iv

STANDARD OF REVIEW .................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.     Koch Is Not Required to Plead Its Claims With Specificity ........................................ 3

II.    Koch's Complaint Alleges Facts Demonstrating Trademark Infringement and
Unfair Competition Under Federal and Common Law ................................................. 3

     A.    Koch Has Adequately Alleged That Defendants' Infringing Uses of Koch's
Marks Were Commercial in Nature.................................................................... 5

     B.    The First Amendment Does Not Excuse Defendants' Violations of Law ........... 11

III.    Koch's Complaint Properly Pleads Violations of the Anticybersquatting
Consumer Protection Act ............................................................................................ 14

IV.    Koch's Complaint Adequately Pleads that Defendants Violated the Computer
Fraud and Abuse Act and Breached the Terms and Conditions of Koch's Website ... 17

     A.    Koch Adequately Pleaded Economic Loss or Damage ...................................... 18

     B.    Koch Properly Pleaded that Defendants Acted Without Or in Excess of
Authorization ................................................................................................... 19

     C.    Koch Correctly Pleaded that Defendants Manifested Assent to Koch's
Website's Terms of Use .................................................................................... 21

     D.    Section 1030(a)(2)(C) of the CFAA Is Not Unconstitutionally Vague ............... 24

CONCLUSION ...................................................................................................................... 25

Plaintiff Koch Industries, Inc. ("Koch" or "Plaintiff") respectfully submits this Opposition to the Motion to Dismiss (ECF. No. 12) filed by Defendants John Does 1-25 ("Defendants").

## INTRODUCTION

Americans enjoy the right of free speech.  They do not enjoy the right to impersonate others or falsely to attribute speech to another.  Defendants admit they created a phony website that was "designed to look like Koch's."  (ECF. No. 13 at iii.)  There is no dispute that this phony website used Koch's trademarks without Koch's authorization.  Defendants admit they did this to perpetrate what they describe as a "hoax" to promote their own competing agenda. (*Id.* at vii.)  They admit they issued a false press release relating to Koch's business and public-affairs practices, and that the "press release" included a link to the phony website bearing Koch's actual trademarks.  (*Id.* at vi.)  There is no question that this conduct violates the law.

Relying on little more than a collection of news clippings, Defendants now seek to escape the consequences of their actions by bringing a meritless motion to dismiss.  Defendants offer this Court a variety of conclusory and unsupported assertions that, for example, Koch cannot ultimately prove Defendants acted in bad faith, used Koch's trademarks in commerce, or caused harm to Koch.  (ECF. No. 13, at 7, 11-12, 14-17.)  But Defendants fail to address the governing standard for a Rule 12(b)(6) motion and fail to provide any authority meaningfully addressing the issues of bad faith, use in commerce, or economic loss in the 12(b)(6) context.  In fact, Defendants' burden is a heavy one:  Accepting the allegations as true and drawing all inferences in the light most favorable to Koch, Defendants must establish that the Complaint fails to plead plausible facts and adequate law to prevail on any of Koch's claims.  This Defendants cannot do.

Courts addressing similar motions to dismiss have rejected Defendants' contentions, holding that the issues of bad faith, use in commerce, and measures of damages or loss are not

ones that can be adjudicated in a motion-to-dismiss posture.  In this case, Koch not only properly pleaded facts sufficient to state actionable claims, but through its Motion for Accelerated Discovery (ECF. No. 5), Koch provided the Court with additional bases for denying Defendants' motion.  Defendants' motion is devoid of merit and fails to meet the high burden Defendants must satisfy.  The Court, therefore, should deny it.

## FACTUAL BACKGROUND

For 70 years, Plaintiff has developed a strong reputation and valuable goodwill in a wide variety of industries, including energy supply, fibers for carpeting and garments, chemicals used in manufacturing, process and pollution control equipment, forest and consumer products, and commodity trading.  (*Id.* ¶ 8; *see also* Declaration of Mark V. Holden in Support of Motion for Accelerated, Pre-Conference Discovery, filed on Dec. 29, 2010 (ECF. No. 5-3) ("Holden Decl.") ¶ 2.)  As a result of its innovation and success, the KOCH name, its registered and unregistered trademarks, and its website (www.kochind.com) have become well known and associated with Koch.  (*See id.* ¶¶ 2-3; Compl. ¶¶ 8-14, Exs. A and B.)

Lacking any legitimate interest in a KOCH formative name or the authority to use one, Defendants contracted with the domain name registration company, Fast Domain, to register www.koch-inc.com (the "Infringing Domain Name").  (*Id.* ¶ 4; Compl. ¶ 15.)  Using the host Bluehost.com, around December 10, 2010, one or more of the Defendants posted an imposter homepage on the Infringing Website that copied exactly Koch's official homepage (including Koch's trademarks) and contained active links to the official Koch website.  (*Id.* ¶ 16; Holden Decl. ¶ 5.)  Taking their impersonation of Koch a step further, Defendants issued a false press release purporting to be from Koch and containing statements about sensitive environmental issues, with false quotes attributed to Koch's Chief Executive Officer.  (*Id.* ¶ 6; Compl. ¶¶ 17-18,

Ex. C.)  The false press release also contained a fictitious name, e-mail address, and telephone number, and an embedded link to the Infringing Website.  (*Id.*)

Defendants intended to deceive the public, divert Internet traffic to its website, harm Koch's reputation, and draw attention to, and funding for, Defendants' activities; and Defendants accomplished these objectives.  (*Id.* ¶¶ 18-19.)  Immediately following the false press release and posting of the fake website, Koch received numerous inquiries, causing it, among other things, to spend time, money, and effort investigating Defendants' conduct, responding to public confusion, working to protect its goodwill, and having the impersonating website taken down. (*Id.* ¶ 19.)

## STANDARD OF REVIEW

When a defendant moves to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), a court asks whether the complaint pleads "enough factual matter (taken as true) to suggest" that plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). This standard does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.[1] "Allegations in the plaintiff's complaint are presumed true" and the action "will not be dismissed unless it appears that the plaintiff cannot prove facts entitling [it] to relief." *Segura v. Granite Constr. Co.*, 493 F. Supp. 2d 1187, 1190 (D. Utah 2007) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)); *Crow v. Uintah Basin Elec. Telecomm.*, No. 2:09-CV-1010-TS, 2010 WL 5069852, at * 3 (D. Utah Dec. 6, 2010) (Allegations "are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party").

"Granting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999) (reversing dismissal). Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 127 S. Ct. at 1965 (internal quotation and citation omitted).

A court must deny a motion to dismiss unless "plaintiff's complaint alone is [not] legally sufficient to state a claim for which relief may be granted." *SCO Group, Inc. v. Novell, Inc.*, 377 F. Supp. 2d 1145, 1154 (D. Utah 2005) (Kimball, J.). Koch's Complaint amply pleads plausible

---

[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

facts and adequate law to prevail on all its claims.  The Court should deny Defendants' motion.

## ARGUMENT

In general, Defendants are free to say whatever they like about Koch and its practices. Indeed, Koch genuinely welcomes and embraces spirited public debate on the issues of the day. Moreover, Defendants may criticize Koch anonymously if they wish.  But Defendants may *not* steal Koch's trademark fraudulently to pretend to *be* Koch.  Rather than forthrightly staking a position against Koch or its philanthropic choices (whether directly or anonymously), Defendants surreptitiously impersonated Koch and its CEO by disseminating statements that Defendants admit were false, deliberately (and now admittedly) misattributing them to Koch, and deliberately (and now admittedly) copying Koch's website and trademarks to cloak their falsehoods with artificial legitimacy.  Those things are not free speech.  They are violations of federal law.  To accept Defendants' position that such conduct is protected by the First Amendment would invite others to impersonate and spread false information about corporations with impunity—a result that would undermine the fundamental need for free markets to operate on truthful information.

Defendants' motion to dismiss has no merit.  Instead of tailoring their argument to the appropriate 12(b)(6) standard or coming forward with any record evidence to defend their actions, Defendants nakedly assert:  "Where as here, the complaint shows that plaintiffs are not entitled to any relief, no purpose is served by allowing discovery, and the Court should instead dismiss the complaint." (ECF. No. 13, at 7.)  Defendants proceed to rely on countless "facts" that have been neither established nor supported by any evidence to contend that:  (1) Koch did not plead its claims with specificity (*id.* at 6-7); (2) Koch cannot prevail on its trademark infringement and unfair competition claims because Defendants made no use in commerce (*id.* at

7-10); (3) Koch's cybersquatting claim should not be allowed because Defendants did not act in bad faith (*id.* at 11-16); and (4) Koch's Computer Fraud and Abuse Act ("CFAA") and breach of contract counts should be dismissed because no damage to Koch occurred, the official Koch website is not password-protected, and Defendants did not manifest assent to the Koch's website's terms of use.  (*id.* at 16-22).

Defendants fail to carry their burden of examining the "complaint alone" in the light most favorable to Koch and showing that the allegations, taken as true, do not state a legal claim on which relief could be granted.  Koch's Complaint more than adequately states its claims against Defendants.  Accordingly, the Court should deny Defendants' motion to dismiss.

## I.     Koch Is Not Required to Plead Its Claims With Specificity

Defendants' first argument to dismiss Koch's Complaint is that they have a "qualified privilege to speak anonymously" and that "courts require plaintiffs to state their claims with specificity."  (ECF. No. 13 at 6.)   The only authority Defendants cite for either proposition is a case decided by a lower court in the State of New Jersey, *Dendrite International, Inc. v. Doe No. 3*, 775 A.2d 756, 760 (N.J. Super. Ct. App. Div. 2001).  Obviously, in federal court the pleading standard is governed by Rule 9, which requires plaintiffs to plead their claims with specificity only when they alleged "fraud or mistake."  Fed. R. Civ. P. 9(b).  Koch has found no federal authority suggesting that any claimed "qualified privilege to speak anonymously" supports a higher pleading standard under Federal Rule of Civil Procedure 9.  Thus, the Court should summarily reject Defendants' argument on this point.

## II.    Koch's Complaint Alleges Facts Demonstrating Trademark Infringement and Unfair Competition Under Federal and Common Law

Koch pleaded standard trademark infringement and unfair competition claims.  It has

alleged facts that, if true, constitute violations of trademark and unfair competition law.  Thus, it has adequately pleaded its claims.  Defendants' arguments to the contrary go to the merits of Koch's claims, not to whether Koch has adequately pleaded them.  Defendants are making the wrong argument at the wrong time.  The Court therefore should deny the motion to dismiss.

To demonstrate trademark infringement, a plaintiff is required to show that it owns a protectable mark distinctive of its goods or services, and that defendant's use of a similar or identical mark is likely to confuse, mislead, or deceive consumers as to "the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [defendant's] . . . activities."  15 U.S.C. § 1125(a)(1)(A); *see also* 15 U.S.C. § 1114; *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 924-25 (10th Cir. 1986).[2]  To evaluate likelihood of confusion, courts "look at (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks."  *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1239 (10th Cir. 2006).

Defendants do not challenge the protectability of Koch's trademarks as distinctive of Koch's goods and services.  (ECF. No. 13, at 7-11.)  Defendants also do not challenge that Koch has adequately pleaded allegations sufficient to establish a likelihood of confusion—indeed, confusion was the whole point of Defendants' effort to impersonate Koch.  (*Id.*)  Defendants

---

[2] Because "[t]rademark infringement is a type of unfair competition[,] the two claims have virtually identical elements and are properly addressed together.  *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).  Similarly, "[t]he elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act."  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004).

half-heartedly assert that no actual confusion resulted because news sources, like the *New York Times* and the *Economist*, understood Defendants' ruse to be a hoax.  (*Id.* at vii-viii.)  But that argument goes to the merits; it is fact intensive and is not sufficient to dismiss a claim at the pleading stage.  Defendants neither mention the likelihood-of-confusion factors nor make any attempt to show how Koch's Complaint does not adequately state a claim pursuant to them.  (*Id.* at 7-11.)  Moreover, Defendants do not cite any authority holding that, under the Lanham Act, media reports can conclusively demonstrate lack of confusion.[3]  Thus, Defendants' reliance on media reports is misplaced and entirely unsupported by authority.

Defendants contend that "Koch cannot satisfy the Lanham Act's commercial-use requirement because [they] used Koch's trademark solely to make a political statement—not to sell goods or services in competition with Koch."  (ECF. No. 13, at 8.)  This argument is misplaced for at least two reasons:  (1) the Complaint pleads that Defendants' use in fact was commercial in nature and has had commercial consequences; and (2) nothing in the Complaint or record establishes that Defendants' conduct constitutes political speech, and the Court would be required to accept Defendants' claimed "facts" about who they are and their intent in order to accept that claim.

A.    **Koch Has Adequately Alleged That Defendants' Infringing Uses of Koch's Marks Were Commercial in Nature**

Koch's Complaint alleges that:  Defendants registered the infringing domain name, set up

---

[3] *See, e.g., Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992) (Lanham Act's "purpose [is] to secure to the owner of the mark the goodwill of his business and to protect the ability of *consumers* to distinguish among competing producers") (emphasis added; internal quotations and citation omitted); J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* ("*McCarthy*") § 23:28 (4th ed. 2010) (unauthorized use of a mark infringes trademark holder's rights if it is likely to confuse an "ordinary consumer" as to source, sponsorship, authorization, or affiliation).

the Infringing Website, and issued the false press release; they did so "to deceive and confuse the public, to disrupt and harm Plaintiff's business and reputation, and to draw attention to and funding for Defendants' activities"; and these things in fact occurred as a result of Defendants' conduct.  (Compl. ¶¶ 18-19.)  If those allegations are true, as the Court must assume they are, Koch has stated valid claims.

Defendants contend Koch cannot prove they used Koch's marks "in connection with any goods or services" under 15 U.S.C. § 1125(a)(1).  But, as this Court has held, the argument that a defendant did not engage in a use in commerce "would require the Court to make evidentiary findings which is not permissible in a motion to dismiss." *1-800-Contacts Inc. v. Mem'l Eye PA*, 95 U.S.P.Q.2d 1226, 1232 (D. Utah 2010).  The majority of other jurisdictions have agreed.  *See Morningware, Inc. v. Hearthware Home Prods.*, 673 F. Supp. 2d 630, 635-36 (N.D. Ill. 2009) ("[A] review of case law . . . reveals that a majority of courts have found that actions such as those taken by [the defendant] in purchasing [the plaintiff's] trademark as a search term constitute a Lanham Act 'use.'").[4]

Setting aside the prematurity of Defendants' challenge, other courts repeatedly have held that using a mark to harm, disrupt, or divert traffic away from a plaintiff's business satisfies the commercial use requirement.  For example, *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001) ("*PETA*"), held that "[t]o use [the mark at issue] 'in connection with' goods or services, [defendant] need not have actually sold or advertised goods

---

[4] *See also Steele v. Bulova Watch Co.*, 344 U.S. 280, 283 (1952) ("in commerce" requirement must be construed liberally because the Lanham Act "confers broad jurisdictional powers upon the courts of the United States"); *Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 595 (D. Del. 2004) (denying motion to dismiss and finding plaintiff satisfied use in commerce requirement where it used www.argos-europe.com and defendant used domain name www.argos-us.com); *Maritz v. Cybergold, Inc.*, 947 F. Supp. 1328, 1335 (E.D. Mo. 1996) (maintaining interactive website that sends out information sufficient to constitute use in commerce).

or services on the [infringing website].  Rather, [defendant] need only have prevented users from obtaining or using [plaintiff's] goods or services . . . ."  *Id.* at 365-66.  In that case, the defendant registered and set up a website at www.peta.org parodying plaintiff's organization for the ethical treatment of animals by entitling the website "People Eating Tasty Animals."  *Id.* at 362-63.  In addition to claiming the website was a constitutionally protected parody, defendant asserted he did not use the PETA mark in commerce.  But the Fourth Circuit agreed with the district court that defendant's use of plaintiff's mark "in the domain name of his website is likely to prevent Internet users from reaching [plaintiff's] own Internet website.  The prospective users of [plaintiff's] services who mistakenly access Defendant's website may fail to continue to search for [plaintiff's] own home page . . . ."  *Id.* at 366.

Such commercial use exists here.  By registering and setting up a website at a domain name containing KOCH, Defendants plainly intended to use the drawing power of Koch's name and the KOCH mark initially to divert Internet traffic from Koch's website or to lure the public and consumers—not to mention to mislead them that the press release with the embedded link to the Infringing Website originated with or was authorized by Koch.  (Compl. Ex. C.)  Defendants' uses of the stylized K mark, the KOCH mark, and an exact replication of Koch's website further ensured initial confusion and set it up to be a competing website.  Even if initial diversion and confusion was all that occurred—which is not the case here—Koch amply has pleaded likelihood of confusion under the Tenth Circuit's "initial interest confusion" doctrine.  *See, e.g., Australian Gold*, 436 F.3d at 1238-39.

Decisions in other jurisdictions are consistent with *PETA*.  For example, *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F. Supp. 2d 176 (W.D.N.Y. 2000), held that defendant's use of plaintiff's trademark in its domain name, which hosted a domain name parodying the plaintiff,

met the requirement of using the mark at issue "in connection with" commerce.  *Id.* at 183.  That case specifically held that "defendants' action in appropriating plaintiffs' mark has a connection to plaintiffs' distribution of its services."  *Id.* at 186; *see also Planned Parenthood Fed. of Am., Inc. v. Bucci*, 42 U.S.P.Q2d 1430, 1435, 1997 WL 133313 (S.D.N.Y. 1997) (use of plaintiff's mark in defendant's domain name "is likely to prevent some Internet users from reaching plaintiff's own Internet web site"); *cf. Australian Gold*, 436 F.3d at 1239 (damage to plaintiff by defendant's infringing use includes "the original diversion of the prospective customer's interest to a source that he or she erroneously believes is authorized"); *Peri Hall & Assocs. v. Elliot Inst. for Soc. Sci. Research*, No. 060202CVWGAF, 2006 WL 742912, at *3 (W.D. Mo. Mar. 20, 2006) (use in commerce satisfied where "even a cursory examination of the two websites at issue shows that the Defendants simply copied the look and feel of [plaintiff's] website, even to the extent of using the exact same pictures in the exact same layout").

As in these cases, "ordinary consumers" searching for Koch's website, www.kochind.com, instead likely clicked on or arrived at the competing Infringing Website, www.koch-inc.com, mistakenly believing it belonged to, or was authorized by, or sponsored or affiliated with, Koch.  (Compl. ¶¶ 15, 19, 21-22, 32-33, 39-41.)  Further, seeing Koch's federally registered stylized K mark and a website layout virtually identical to Koch's, an ordinary consumer logically would attribute the Infringing Website and false press release to Koch, thus harming Koch's brand, reputation, and goodwill.  (Compl. ¶¶ 11, 15-18, Ex. B.)  These allegations more than satisfy the use-in-commerce requirement.  Moreover, they are not hypothetical.  Koch can show (and squarely has alleged) that it received numerous inquiries asking whether the Infringing Website or false press release came from Koch or was authorized by Koch.  (*Id.*)  Even though Koch ultimately dispelled this initial confusion, the very fact that

people had to inquire itself demonstrates confusion or uncertainty and is indicative of further confusion in the general population. *See Australian Gold*, 436 F.3d at 1238-39. Further, the necessity for Koch to investigate and respond to these inquiries disrupted its business activities and cost the company valuable time, money, and effort. (Compl. ¶ 19.)

Attempting to avoid these plain facts, Defendants rely on *Utah Lighthouse*. (ECF. No. 13, at 8-9.) But that case is inapposite. To start, it was decided on summary judgment following discovery, not on a motion to dismiss. 527 F.3d at 1049. Further, the defendant's website in that case was not identical to plaintiff's but merely used plaintiff's mark to criticize the plaintiff directly. *Id.* at 1053. Put differently, the defendant in *Utah Lighthouse* used plaintiff's mark to make plaintiff the explicitly direct object of critical commentary and parody, not to impersonate the plaintiff; here, Defendants used Koch's trademarks to perpetrate a competing fake website to disseminate false commentary and to mislead consumers into believing the commentary came from Koch or that the website was Koch's—in other words, to pass themselves off as Koch.[5] (Compl. ¶ 17, Ex. C.)

Moreover, even if this Court reads *Utah Lighthouse* to hold that some commercial use beyond interfering with plaintiff's business is necessary to constitute use in commerce,[6] Koch

---

[5] The other cases Defendants cite are equally unavailing. For example, *Proctor & Gamble v. Haugen*, 947 F. Supp. 1551 (D. Utah 1996), is entirely distinguishable from this case because the asserted common law unfair competition claim was based entirely on defendants' alleged defamatory speech about Proctor & Gamble; no "passing off" or "misappropriation" of a trademark or trade name was alleged. *Id.* at 1554. The court simply refused to extend common law unfair competition to cover claims of violating "traditional norms of fair play." *Id.* Here, however, Koch explicitly has pleaded that Defendants misappropriated its trademarks and passed off the Infringing Website and false press release as having come from Koch. (Compl. ¶¶ 15-19, 32-33, 39-41.)

[6] *Utah Lighthouse* provided that use "merely to make a comment on the trademark owner's goods or services" is not sufficient to demonstrate a use in commerce by the defendant. 527 F.3d at 1054. Restated, defendant's "interference" must be in furtherance of some commercial or

9

alleged this when it averred that "Defendants issued the false press release and set up the fake

website with the intent to . . . draw attention to and funding for Defendants' activities."  (Compl.

¶ 18.)  Defendants now have claimed they are "members of Youth for Climate Truth, a group of

anonymous youth concerned about global climate change."  (ECF. No. 13, at vi.)  Organizations

require funding to exist, and Koch plausibly has alleged that, at a minimum, Defendants were

using the Infringing Website and fake press release in connection with raising money to further

Defendants' causes that compete with Plaintiff's.  Defendants, therefore, are wrong to contend

that any appropriate reading of *Utah Lighthouse* entitles them to a dismissal of this action.

Defendants also are wrong when they argue that the commercial-use requirement applies

only when the defendant has a profit motive. (ECF. No. 13, at 7-10.)  Courts repeatedly have

stated that "there is no profit requirement in the Lanham Act."  *Christian Sci. Bd. of Dirs. of the*

*First Church of Christ, Scientist v. Robinson*, 123 F. Supp. 2d 965, 970 (W.D.N.C. 2000).[7]

Moreover, merely providing information on a website or purchasing and parking a domain name

may constitute use in commerce.  *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D.

Ill. 2008) (merely registering and "parking" domain names sufficient use in commerce to survive

motion to dismiss); *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, 596 (D. Del. 2004)

(providing information on website was use sufficient to withstand motion to dismiss); *see also*

*Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 130-31 (2d Cir. 2009) (keywords on Internet

constituting use in commerce); *Medline Indus. v. Strategic Commercial Solutions, Inc.*, 553 F.

Supp. 2d 979 (N.D. Ill. 2008) (references to plaintiff's marks in telephone conversations with

---

economic goal of the defendant.  Here, Koch alleged that Defendants used Koch's trademarks
both to disrupt Koch's business *and* to further fundraising for their own purposes. (Compl. ¶ 18.)
[7] *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 92-93 (2d Cir.
1997) ("It appears that 'use in commerce' denotes Congress's authority under the Commerce
Clause rather than an intent to limit the Act's application to profit-making activity.")

consumers and forwarding consumer data to financial institutions was use in commerce).

In short, Koch has sufficiently alleged that Defendants used Koch's name and trademarks in commerce.  Whether that allegation is correct is a matter for another day.  It cannot be decided on a motion to dismiss.  Thus, Defendants' motion should be denied.

### B.    The First Amendment Does Not Excuse Defendants' Violations of Law

Defendants suggest that the First Amendment limits the application of federal trademark and unfair competition law.   But Defendants ignore black-letter principle that the First Amendment does not protect impersonation or false or misleading speech.  *See, e.g., also Cincinnati v. Discovery Network*, 113 S. Ct. 1505, 1518 (1993)  (Blackmun, J., concurring) ("A listener has little interest in receiving false, misleading, or deceptive commercial information."); *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 553-54 (5th Cir. 2001) ("[F]alse commercial speech receives no First Amendment protection").[8]  For speech even to come within First Amendment analysis, "it at least must concern lawful activity and not be misleading." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980).

Defendants again respond primarily by arguing the merits, asserting that their conduct constitutes political speech that is protected by the First Amendment.  (ECF. No. 13, at 1-4, 8-10.)  Again, this is not the proper point in the case for the Court to adjudicate the merits of the parties' dispute.  Defendants' apparent justification for continually contending they "used Koch's trademark solely to make a political statement" (*id.* at 8) and that this case "implicates core

---

[8] *See also Coca-Cola Co. v. Purdy*, 382 F.3d 774, 787-88 (8th Cir. 2004) (Where an anti-abortion zealot registered domain names which included famous trademarks to call attention to his site, the court held he had no free speech right to deceive the public in order to expose them to an anti-abortion message.); Alex Kozinski, *Trademarks Unplugged*, 68 N.Y.U. L. REV. 960, 973 (1993) ("So long as trademark law limits itself to its traditional role of avoiding confusion in the marketplace, there's little likelihood that free expression will be hindered.").

political speech" (*id.* at 10) is that they intended their conduct to convey a political message and various newspaper clippings (not in evidence) interpreted it as such (*id.* at iii, vii-viii, 10).

But neither the *ipse dixit* of counsel nor the scattershot opinions of select news commentators establishes that Defendants' conduct constitutes speech or that it is political in nature.   Contrary to Defendants' assumption, nothing in the record establishes that their impersonation and theft of Koch's identity constitute speech within the meaning of the First Amendment, and the issue is not one that is appropriately decided at the motion-to-dismiss stage; additional evidence is necessary to determine how these acts were perceived.  *See, e.g.*, *Spence v. Washington*, 418 U.S. 405, 410-11 (1974) (for conduct to constitute speech, "in the surrounding circumstances the likelihood [must be] great that the message would be understood by those who viewed it").

Nor should this Court follow Defendants' unfounded assumption that the Infringing Website and fake news release are "core political speech."  Core political speech "involves the type of interactive communication concerning political change."  *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1099 (10th Cir. 2006) (denying "core political speech" protection for challenge to constitutional provision requiring supermajority for passing wildlife-related initiatives) (internal quotations and citation omitted).[9]  Nothing in what Defendants did involves "interactive communication concerning political changes."  The Infringing Website and fake news release concerned a privately held company, not any political body or process, and Defendants expressly take the position that their press release and website were not interactive.

To prop up their claim to First Amendment protection, Defendants mistakenly attempt to

---

[9] *See also Cincinnati*, 113 S. Ct. at 1510 ("This very case illustrates the difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category.")

analogize this case to cases dealing with Internet "gripe sites."   (ECF. No. 13, at 2.)   The

Infringing Website, however, cannot be considered a "gripe site" because it does not *criticize*

Koch but *impersonates* it.   *See Estate of Presley v. Russen*, 513 F. Supp. 1339, 1358-59 (D.N.J.

1981) (impersonator's use of Elvis Presley's name could lead public to believe that his estate had

licensed or sponsored such a performance).[10]   Unlike Defendants' Infringing Website and fake

press release, which impersonated Koch, all of the cases Defendants cite involve direct and

explicit criticisms of their target.[11]   Instead of using Koch's name or marks to criticize it directly,

Defendants' site and press release used Koch's name and marks improperly to lure consumers,

---

[10] *See also Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 72-73 (S.D.N.Y. 1988)
(plaintiff states a claim for passing off and false advertising in violation of § 43(a) by alleging
defendant marketed its radio program package to radio stations with labels falsely crediting
plaintiff as the producer of the package).

[11] *In re Anonymous Online Speakers*, No. 09-71265, 2011 WL 61635 (9th Cir. Jan. 7, 2011)
(involving critical Internet posts); *Taubman Co. v. Webfeats*, 319 F.3d 770 (6th Cir. 2003) (gripe
site "shopsatwillobend.com"); *SaleHoo Groups, Ltd. v. ABC Co.*, 722 F. Supp. 2d 1210 (W.D.
Wash. 2010) (gripe site "salehoosucks.com"); *Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128
(D.D.C. 2009) (criticisms on an Internet site); *Doe I and Doe II v. Individuals whose true names
are unknown*, 561 F. Supp. 2d 249 (D. Conn. 2008) (derogatory posts on website); *McMann v.
Doe*, 460 F. Supp. 2d 259 (D. Mass. 2006) (gripe site "paulmcmann.com"); *Best Western Int'l,
Inc. v. Doe*, No. CV-06-1537, 2006 WL 2091695 (D. Ariz. July 25, 2006) (critical posts on an
Internet site); *Highfields Capital Mgmt. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ("sardonic
commentary" posted on an Internet message board); *Doe v. 2theMart.com*, 140 F. Supp. 2d 1088
(W.D. Wash. 2001) (critical posts made on an Internet bulletin board); *Pilchesky v. Gatelli*, No.
38MDA2009, 2011 WL 17520 (Pa. Super. Ct. Jan. 5, 2011) (critical posts on an Internet site);
*Mortgage Specialists v. Implode-Explode Heavy Indus.*, 999 A.2d 184 (N.H. 2010) (critical
comments on an Internet site); *Solers, Inc. v. Doe*, 977 A.2d 941 (D.C. 2009) (critical report to a
trade association); *Indep. Newspapers v. Brodie*, 966 A.2d 432 (Md. 2009) (comments on
Internet discussion board); *Krinsky v. Doe 6*, 159 Cal. App. 4th 1154 (Cal. App. 2008) (posts on
a Yahoo! message board); *Greenbaum v. Google, Inc.*, 845 N.Y.S.2d 695 (N.Y. Sup. Ct. 2007)
(blog posts); *In re Does 1-10*, 242 S.W.3d 805 (Tex. App. 2007) (blog posts); *Mobilisa v. Doe*,
170 P.3d 712 (Ariz. Ct. App. 2007) (critical e-mail); *Doe v. Cahill*, 884 A.2d 451 (Del. 2005)
(blog posts) *Dendrite Int'l, Inc. v. Doe No. 3*, 775 A.2d 756 (N.J. Super. Ct. App. Div. 2001)
(posts on Yahoo! bulletin board).

and (at the very least, initially)[12] confuse them.  *See Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 308 (D.N.J. 1998) (no First Amendment exemption when "the Defendant Internet site uses the Mark and the Name of the Plaintiff Organization as its address, conveying the impression to Internet users that the Plaintiff Organization is the sponsor of the Defendant Internet site."); *Planned Parenthood*, 1997 WL 133313, at *10-11 (rejecting First Amendment defense to Lanham Act claims; "By using [plaintiff's] mark as a domain name and home page address and by welcoming Internet users to the home page with the message 'Welcome to Planned Parenthood Home Page!' defendant identifies the web site and home page as being the product, or forum, of plaintiff.").[13]  Thus, the Court should deny Defendants' request to dismiss Koch's federal and common law trademark infringement and unfair competition claims.

III.   **Koch's Complaint Properly Pleads Violations of the Anticybersquatting Consumer Protection Act**

Koch has pleaded the elements of a claim under the Anticybersquatting Consumer Protection Act ("ACPA").  Defendants deny that Koch ever will be able to prove its claims.  But again, what Koch will ultimately be able to prove is not relevant at this point.  The only question under Rule 12 is whether Koch has adequately pleaded its ACPA claim, and it has.  Thus, the Court should deny Defendants' motion to dismiss.

To establish a violation of the ACPA, a plaintiff is required to show that a defendant has in bad faith registered or used a domain name in which the defendant has no bona fide interest

---

[12]  *See Australian Gold*, 436 F.3d at 1238-39 (recognizing "initial interest" confusion as actionable form of likelihood of confusion).

[13]  *See also McCarthy* § 25:76 ("In the author's opinion, gripe sites that use the target's trademark in the domain name either identically or in a confusingly similar format violate mainstream trademark policies. Such sites should not be immunized by free speech principles . . . . [because they] rely on confusion caused by the domain name to convey their message, thereby negating any free speech defense.").

and that is confusingly similar to plaintiff's trademark.  15 U.S.C. § 43(d)(1).  Koch alleges, *inter alia*, that Defendants set up the Infringing Website "with the intent to deceive and confuse the public, to disrupt and harm Plaintiff's business and reputation, and to draw attention to and funding for Defendants' activities."  (Compl. ¶ 18.)  The Complaint further alleged Defendants "used the Infringing Domain Name with the bad faith intent of causing harm to Plaintiff and its brands and of profiting unlawfully from Koch Industries, Inc.'s mark by using Koch's mark to call attention to and promote Defendants' agenda, and to obtain funding for their activities."  (*Id.* ¶ 26.)  Those allegations squarely support an ACPA claim.

Defendants only challenge the sufficiency of Koch's pleading with respect to the requirement to show a bad faith intent to profit, relying once more primarily on *Utah Lighthouse*. (ECF. No. 13, at 12.)  Again, that case is readily distinguishable from this one, particularly in its present procedural posture.  Because *Utah Lighthouse* was decided on summary judgment, the court had the benefit of evidence for its analysis of the ACPA's enumerated bad-faith factors. 527 F.3d at 1058.  Moreover, the court concluded defendant's use of the domain name at issue constituted a parody of plaintiff's website and, therefore, qualified as a fair use under 15 U.S.C. § 1125(d)(1)(B)(IV).  *Id.*  It further found defendant did not intend to divert consumers from plaintiff's website or cause a likelihood of confusion as to source, sponsorship, affiliation, or endorsement under § 1125(d)(1)(B)(V).  *Id.* 1058-59.

Unlike *Utah Lighthouse*, this matter is before this Court on a motion to dismiss, where the only inquiry is whether Koch adequately has pleaded allegations on which relief may be granted.  Koch's Complaint alleges Defendants' bad faith intent to profit from its registration and use of the Infringing Domain Name and Website.  (*See* Compl. ¶¶ 18-19, 26.)  Further, distinct from *Utah Lighthouse*, Defendants do not (and cannot) contend the Infringing Website was a

parody of Koch's website, and no evidence before this Court otherwise shows it was a fair use under 15 U.S.C. § 1125(d)(1)(B)(IV).[14]   Similarly, Koch plainly alleges Defendants diverted Internet traffic to the competing Infringing Website by pleading: (a) Defendants used Koch's name in the Infringing Domain Name (www.koch-ind.com) to "deceive," "draw attention to," and "call attention to" the Infringing Website; and (b) Defendants "embedded in the [false] press release a link to Defendants' fake website."  (Compl. ¶¶ 17-19, 26.)  Defendants, therefore, cannot rely on the reasoning in *Utah Lighthouse* that no diversion occurred or that consumers were not likely to be confused regarding the press release's or website's source, sponsorship, affiliation, or endorsement.

Beyond these flaws in Defendants' anticybersquatting argument lies a more fundamental one:  This Court and others expressly have held that a "court cannot rule as a matter of law on [a defendant's] intent at the motion to dismiss stage before any discovery is considered in the case." *SCO Group, Inc.*, 377 F. Supp. 2d at 1154 (Kimball, J.); *see also Elmore v. Capstan*, 58 F.3d 525, 527 (10th Cir. 1995) (intent is an issue for a trier of fact to decide based on inferences from evidence); *Champion Cooler Corp. v. Dial Mfg.*, No. 3:09-CV-1498-D, 2010 WL 1644193, at *3

---

[14] By failing even to raise parody, Defendants have waived the argument here.  Parody requires the inclusion of obvious indicators immediately conveying that the subject matter is not the original and does not originate from the trademark owner.  *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 967 (10th Cir. 1996) ("A parody relies upon a difference from the original mark, presumably a humorous difference, in order to produce its desired effect"); *Anheuser-Busch, Inc. v. Balducci Publ'ns*, 28 F.3d 769, 776 (8th Cir. 1994) (rejecting claim of parody and finding MICHELOB OILY environmentally-themed advertisement confusingly similar to plaintiff's use of MICHELOB mark; "By using an obvious disclaimer, positioning the parody in a less confusing location, altering the protected marks in a meaningful way, or doing some collection of the above, [defendant] could have conveyed its message with substantially less risk of consumer confusion.").  Defendants' false press release and Infringing Website used Koch's name and marks in their entirety and do not include any differences that immediately and obviously convey that the marks are not the originals.

(N.D. Tex. Apr. 22, 2010) ("[T]he court cannot say as a matter of law that the examples of alleged trademark infringement on which [plaintiff] relies in its complaint are not intentional or in bad-faith. The motion to dismiss does not present a proper procedural mechanism for the court to evaluate those facts.") (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).[15]   The Court should, therefore, deny Defendants' request to dismiss the ACPA claim.

## IV.   Koch's Complaint Adequately Pleads that Defendants Violated the Computer Fraud and Abuse Act and Breached the Terms and Conditions of Koch's Website

Defendants' final set of arguments challenge the sufficiency of Koch's pleading with respect to its breach-of-contract and Computer Fraud and Abuse Act ("CFAA") claims.[16]   (ECF. No. 13, at 16-23.)   Specifically, Defendants contend:   (1) Koch has not plausibly alleged economic loss or damage; (2) Defendants cannot be shown to be guilty of gaining unauthorized access or exceeding authorized access to a protected computer system within the meaning of 18 U.S.C. § 1030; (3) Defendants did not manifest any assent to an offer to form a contract; and (4) applying 18 U.S.C. § 1030(a)(2)(C) to create liability for violating website terms of service should be unconstitutionally void for vagueness.   (*Id.*)

Defendants have not challenged, and therefore concede, the remaining elements of

---

[15] *See also United States v. Knox*, 396 U.S. 77, 83 n.7 (1969) (intent should not be determined on motion to dismiss); *Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1366 (S.D. Fla. 2009) (rejecting defendant's lack-of-intent argument on motion to dismiss); *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742 (W.D. Tex. 2006) (issue of defendant's intent could not be resolved at motion to dismiss phase in Lanham Act suit); *Haymond v. Lundy*, No. 99-5015, 2000 WL 804432, at *12 (E.D. Pa. June 22, 2000) ("[F]actual arguments and theories of motive and intent are not appropriate on a motion to dismiss. [Plaintiff's] pleadings are sufficient to survive such a motion because if [its] factual allegations are proved, it may obtain" the Lanham Act relief it seeks.)

[16] The CFAA is a criminal statute but provides a civil cause of action to redress violations of the CFAA: "Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action . . . to obtain compensatory damages and injunctive relief or other equitable relief."  18 U.S.C. § 1030(g).

Koch's breach-of-contract and Computer Fraud and Abuse Act claims.   Each of Defendants' contentions fails for the following reasons.

###### A.   Koch Adequately Pleaded Economic Loss or Damage

"Loss" under § 1030(e)(11) of the CFAA means "any reasonable cost to any victim, *including the cost of responding to an offense*, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis added).   A loss of $5,000 or more during any one year period brings a claim within the CFAA's purview.   *See* 18 U.S.C. § 1030(a)(5)(B)(i).

Here, Koch alleged *inter alia* that "as a result of Defendants' actions, Plaintiff's business and reputation were harmed, and Plaintiff incurred monetary damages, including costs associated with spending time and money to respond to inquiries about the fake press release and Defendants' other fraudulent activities, investigative and legal expenses associated with determining the host for Defendants' website and contacting the host to have it taken down, and investigative and legal fees associated with ascertaining the identity of Defendants."   (Compl. ¶ 19; *see also* Holden Decl. ¶¶ 7-10.)   Koch has not yet ascertained the full monetary value of these losses, but even setting aside Koch's legal expenses associated with this matter, Koch has expended well in excess of $5,000 in employees' time, investigative costs, and actions to correct the falsehoods the Infringing Website set out.   (*See id.*)

These allegations are more than sufficient to satisfy the CFAA's loss threshold, particularly on a Rule 12(b)(6) motion.   *See Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 208 (N.D.N.Y. 2010) ("Because Plaintiff has alleged that Defendant's unauthorized activity resulted in over $5,000 in losses, which included the cost to investigate

Defendant's actions and assess the resulting damages, Plaintiff has adequately alleged loss sufficient to withstand Defendant's motion to dismiss the CFAA claim."); *SuccessFactors, Inc. v. Softscape, Inc.*, 544 F. Supp. 2d 975, 980-81 (N.D. Cal. 2008) (holding that the cost of investigating and identifying the CFAA offense, including "many hours of valuable time away from day-to-day responsibilities, causing losses well in excess of $5,000," qualified as "cost[s] of responding to an offense" under).[17]   The Court here should reject Defendants' "loss" argument as a viable basis for its motion to dismiss.

**B.     Koch Properly Pleaded that Defendants Acted Without Or in Excess of Authorization**

Under the CFAA, a defendant has acted "without authorization"[18] when he has been granted, for limited purposes, access to a company computer system, but has somehow used that access to pursue his own personal interests or interests adverse to the plaintiff.  *See NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1057 (S.D. Iowa 2009).  Acting "without authorization" under the CFAA, therefore, includes accessing a computer with some limited authorization, but subsequently stepping outside the bounds of that authorization to obtain information or commit some act that is not authorized, and in a manner inconsistent with the company's grant of access.

---

[17] *SuccessFactors* concerned defendant's anonymous e-mail to hundreds of plaintiff's actual or prospective customers from "John Anonymous" titled "SuccessFactors Failures and Problems" and containing a presentation purporting to "represent the measure of SuccessFactors' lack of corporate integrity."  544 F. Supp. 2d at 977.  In granting plaintiff's preliminary injunction and expedited discovery motions, the court expressly rejected defendant's argument that time and money spent investigating defendant's identity was not recoverable under the CFAA.  *Id.* at 981. *See also A.V. ex rel. Vanderhye v. iParadigms, LLC*,  562 F.3d 630, 646 (4th Cir. 2009) (reversing summary judgment in part because the district court construed too narrowly the "economic damages" provision of § 1030(e)(11)); *Cultural Travel BV v. Explorica, Inc.*, 274 F.3d 577, 582–84 (1st Cir. 2001) (cognizable loss under the CFAA represented by remedial consultant fees); *In re DoubleClick Inc. v. Privacy Litig.*, 154 F. Supp. 2d 497, 521 (S.D.N.Y. 2001) (Congress intended term "loss" to target remedial expenses that could not be properly considered direct damages).

[18] This term is not defined in the Act itself.

*See Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420–21 (7th Cir. 2006) (noting that the distinction between "without authorization" and "exceeding authorized access is "paper thin").[19]

Even if Defendants had some limited authorization, they acted well beyond the authorization Koch implicitly or explicitly granted. Under the CFAA, a defendant "exceeds authorized access" when he or she "accesses a computer with authorization and . . . uses such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." Under Koch's terms of use, the "information and materials on [Koch's] Web site and all intellectual property rights in or relating to them are the property of [Koch], and any reproduction, publication, broadcast or posting by you for your own benefit is *prohibited unless you obtain prior written approval from the Koch Companies*." (Compl. ¶ 44 (emphasis added).) A clearer statement could not be made that reproducing, using, or re-posting the material from Koch's website is *not* authorized by Koch. Defendants do not contend they requested or received the written permission required by Koch's terms of use. (*See* ECF. No. 13, at 17-20.) And they admit that they reproduced, re-posted, and used for their own benefit the material (including Koch's name and trademarks) from Koch's website. (*Id.*) Therefore, Koch plainly has pleaded that Defendants acted without or in excess of their authorized access to the website information hosted on Koch's computers. *See United States v. Rodriguez*, No. 09-15265, 2010 WL 5253231, at *4 (11th Cir. Dec. 27, 2010) (holding that a Social Security Administration employee violated the CFAA when he searched its databases for the personal information of seventeen of his friends and relatives); *United States v. John*, 597 F.3d 263, 270–73 (5th Cir.

---

[19] Defendants attempt to draw a distinction between "access" and "use," contending Koch authorized access to everything Defendants used by posting it on the Koch website. (ECF. No. 13, at 18.) This argument fails because, even if Defendants had authorized access, they expressly lacked authorization to take the information (*i.e.,* to access the site to copy it) or to use the information they took in the manner they used it.

2010) ("Access to a computer and data that can be obtained from [otherwise authorized] access may be exceeded if the purposes for which access has been given are exceeded."); *Explorica*, 274 F.3d at 583 ("If [plaintiff's] allegations are proven, it will likely prove that whatever authorization [defendant] had to navigate around [plaintiff's] site . . . it exceeded that authorization").

Moreover, the intent of the accessing party is critical to the "without authorization" or "in excess of authorization inquiry. *NCMIC Fin. Corp.*, 638 F. Supp. 2d at 1056 (addressing as a critical issue "where the [defendant] intended to use the information . . . at the time of access"). As discussed above, because intent is an issue that cannot properly be decided on a motion to dismiss, Defendants' argument fails for this reason alone. *See, e.g.*, *SCO Group, Inc.*, 377 F. Supp. 2d at 1154. The Court should reject Defendants' contention that the Complaint does not adequately plead that they acted without or in excess of authorization.

### C.     Koch Correctly Pleaded that Defendants Manifested Assent to Koch's Website's Terms of Use

Assent "may be stated in words either oral or written, or may be inferred wholly or partly from conduct." *Restatement (Second) of Contracts* § 4 (1981). Koch alleges that the use of its website is subject to certain terms and conditions, and that "[b]y using Koch's website Defendants agreed to its terms and conditions." (Compl. ¶¶ 44-45.) The elaborate nature of Defendants' impersonation alone shows that Defendants repeatedly accessed, or spent a substantial amount of time exploring, Koch's website such that they were aware of Koch's terms of use. Moreover, even a cursory tour of Koch's website reveals that a link to the terms of use is on the home page (*see* Compl. Ex. B.), and every page of the website. *See* www.kochind.com. Defendants' suggestion that they were unaware of Koch's website's terms of use appears

particularly disingenuous when they copied the link to the terms of use onto the Infringing Website.

Defendants' legal contentions also are misplaced. The assent necessary to form a contract over the Internet does not require that the website "provide [a] method for manifesting such assent." (ECF. No. 13, at 21.) "The principle has long been established that no particular form of words is necessary to indicate assent—the offeror may specify that a certain action in connection with his offer is deemed acceptance, and ripens into a contract when the action is taken." *Ticketmaster Corp. v. Tickets.Com, Inc.*, No. CV997654, 2003 WL 21406289, at *2 (C.D. Cal. Mar. 7, 2003) (discussing "shrinkwrap," cruiseline ticket, airline ticket, and other lines of cases going back to *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), all holding contracts enforceable where assent is manifested through conduct); *see also ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) (the "master of the offer[] may invite acceptance by conduct, and may propose limitations on the kind of conduct that constitutes acceptance").

Assent may occur when a defendant repeatedly accesses a plaintiff's website, such that the defendant becomes aware of the plaintiff's terms of use. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) (repeated access by defendant manifested assent; "we see no reason why the enforceability of the offeror's terms should depend on whether the taker states (or clicks), 'I agree'"). In fact, *Register.com* distinguishes the case on which Defendants primarily rely for their attack on Koch's breach-of-contract claim, *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002). (*See* ECF. No. 13, at 20.)

> There is a crucial difference between the circumstances of *Specht*, where we declined to enforce Netscape's specified terms against a user of its software because of inadequate evidence that the user had seen the terms when

> downloading the software, and [circumstances] where the taker of information . . .
> knew full well the terms on which the information was offered but was not
> offered an icon marked, 'I agree,' on which to click.

*Register.com*, 356 F.3d at 403.

Numerous recent cases have held that an enforceable contract may be formed merely by visiting a website, when the website's terms and conditions specify that the user agrees to them simply by using the website. *See*, *e.g.*, *Molnar v. 1-800-Flowers.com, Inc.*, No. 08-0542, 2008 WL 4772125, at *7 (C.D. Cal. Sept. 29, 2008) (denying motion to dismiss and recognizing that "courts have held that a party's use of a website may be sufficient to give rise to an inference of assent to the Terms of Use contained therein (so called 'browsewrap contracts')"; *Ticketmaster*, 2003 WL 21406289, at *2 ("[A] contract can be formed by proceeding into the interior web pages after knowledge (or, in some cases, presumptive knowledge) of the conditions accepted when doing so."); *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 982 (E.D. Cal. 2000) (refusing to dismiss a breach of contract claim and stating that "[t]aking into consideration the examples provided by the Seventh Circuit—showing that people sometimes enter into a contract by using a service without first seeing the terms—the browser wrap license agreement may be arguably valid and enforceable").

Consistent with these cases, Koch's Complaint amply alleges that Defendants agreed to the website's terms of use by using the website. (Compl. ¶ 45.) Accordingly, the breach-of-contract claim should survive Defendants' motion to dismiss. *See Corbis Corp. v. Integrity Wealth Mgmt., Inc.*, No. C09-708MJP, 2009 WL 3835976, at *2 (W.D. Wash. Nov. 16, 2009) (refusing to dismiss breach-of-contract claim where assent was based on visiting the website at issue). The analysis Defendants advocate is not appropriate at this stage because it "requires factual findings about the appearance of the website" and Defendants' conduct, intent, and

4844-0833-8184. 1                                           23

knowledge.  *Id.* (distinguishing *Specht* as not "involving a 12(b)(6) motion" and as "more appropriate to a summary judgment determination"); *see also Internet Archive v. Shell*, 505 F. Supp. 2d 755, 765-66 (D. Colo. 2007) (denying motion to dismiss breach-of-contract claim based on defendant's reproduction of plaintiff's website material; plaintiff alleged requisite breach-of-contract elements and had "not had the opportunity to develop a factual record on this point").[20]

Defendants are correct about one thing—that the *ultimate* burden of proof for establishing mutual assent to the terms of a contract is on the party claiming there is a contract.  (ECF. No. 13, at 21.)  But on their motion to dismiss, the burden is on Defendants to show that, taking the allegations in the Complaint as true and viewing all inferences in the light most favorable to Koch, Koch has not pleaded facts on which relief can be granted.  Defendants have not made such a showing, and their motion to dismiss should be denied.

### D.      Section 1030(a)(2)(C) of the CFAA Is Not Unconstitutionally Vague

The "vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  *United States v. Williams*, 553 U.S. 285, 304, 128 S. Ct. 1830, 1845 (2008).  Despite Defendants' repeated references to "criminalization" (ECF. No. 13, at 22), they do not face any criminal liability in this action.  Rather, Koch has brought this

---

[20] The cases on which Defendants rely are readily distinguishable. *See Cvent, Inc. v. Eventbrite, Inc.*, No. 1:10-cv-00481, 2010 WL 3732183, at *8 (E.D. Va. Sept. 25, 2010) (defendants unaware of plaintiff's terms of use by virtue of using automated "screenscraping"); *Snap-On Bus. Solutions Inc. v. O'Neil & Assocs., Inc.*, 2010 WL 2650875, at *1 (N.D. Ohio July 2, 2010) (breach-of-contract claim decided only after jury trial); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366-67 (E.D.N.Y. 2009) (consumer making purchase of a vacuum cleaner never viewed terms and conditions which were buried in fine print and required scrolling down to view); *Defontes v. Dell Computers Corp.*, 2004 WL 253560, at *7 (R.I. Super. Jan. 29, 2004) (not a motion-to-dismiss case; generally agreeing with the line of cases holding shrinkwrap agreements valid); *Motise v. Am. Online, Inc.*, 346 F. Supp. 2d 563, 564-65 (S.D.N.Y. 2004) (transferring case consistent with America Online's terms of use).

lawsuit pursuant to the CFAA's civil action provision.  18 U.S.C. § 1030(g).  The primary case

on which Defendants rely for their void-for-vagueness challenge concerned whether violations of

a website's terms of use constituted a *crime* under the CFAA, *not* whether civil liability could be

attached to the defendant's conduct.  *See United States v. Drew*, 259 F.R.D. 449 (C.D. Cal.

2009).  Setting aside that the terms of use that Defendants violated are not vague,[21] Defendants

do not cite a single case applying the vagueness doctrine to prohibit a civil application of the

CFAA or to prohibit a civil action in any context.  (*See* ECF. No. 13, at 22-23.)  Accordingly,

they have failed to show that the void-for-vagueness argument is a proper basis for dismissing

Koch's CFAA civil cause of action.

## CONCLUSION

Defendants have failed to satisfy their high burden of showing that, accepting Koch's

allegations as true and viewing all inferences in the light most favorable to Koch, the Complaint

fails to state any claim on which relief may be granted.  Therefore, this Court should deny

Defendants' motion to dismiss.

Respectfully submitted,


   /s/ Juliette P. White
Juliette P. White
Michael W. Young
PARSONS, BEHLE & LATIMER

*Attorneys for Plaintiff Koch Industries, Inc.*


Of Counsel:

---

[21] Defendants confuse vagueness with overbreadth when they argue "[i]f Koch's CFAA theory is
taken seriously, the authors of this memorandum are subject to criminal and civil liability merely
for citing, quoting, and linking to the content of Koch's website . . . ."  (ECF. No. 13, at 22-23.)

Judith A. Powell
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
(404) 815-6500  (telephone)
(404) 815-6555  (facsimile)
jpowell@kilpatricktownsend.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2011, I electronically filed the foregoing

Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss with the Clerk of

Court using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Deepak Gupta | Lester A. Perry (2571) |
| Gregory A. Beck | HOOLE & KING L.C. |
| PUBLIC CITIZEN LITIGATION GROUP | 4276 South Highland Drive |
| 1600 20th Street NW | Salt Lake City, Utah 84124 |
| Washington, DC 20009 | Tel. (801) 272-7556 |
| Tel. (202) 588-1000 | Fax (801) 272-7557 |
| Fax (202) 588-7795 | lap@hooleking.com |
| dgupta@citizen.org | |
| gbeck@citizen.org | |

and I hereby certify that I have mailed the foregoing, by United States Postal Service, to the

following non-CM/ECF participants:

Judith A. Powell
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500  (telephone)
(404) 815-6555  (facsimile)
jpowell@kilpatricktownsend.com

 /s/ Juliette P. White

*Attorney for Plaintiff Koch Industries, Inc.*